UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIYANA N. HAMPTON,

                Plaintiff,                    Case No. 2:19-cv-13478
                                              District Judge Gershwin A. Drain
v.                                         Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 21) and AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 21), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Aiyana N. Hampton, brings this action under 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(a)(3) for review of a final decision of the Commissioner of

Social Security (Commissioner) denying her applications for Disability Insurance

(DI) benefits and Supplemental Security Income (SSI).  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's amended motion for summary judgment (ECF No. 18), the Commissioner's cross-motion for summary judgment (ECF No. 21), Plaintiff's reply brief (ECF No. 13), and the administrative record (ECF No. 12).

### A.     Background and Administrative History

Plaintiff alleges her disability began on September 1, 2015, at the age of 39. (R. at 169, 171.)  She filed applications for Disability Insurance Benefits (DIB) and SSI on February 20, 2016.  (R. at 75, 87.)  In her disability report, she lists congenital heart disease, anxiety, and depression as limiting her ability to work. (R. at 208.)  Her applications were denied on June 22, 2016.  (R. at 101-116.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at 119-120.)  On November 15, 2017, ALJ Patricia S. McKay held a hearing, at which Plaintiff and a vocational expert (VE), James Fuller, testified.  (R. at 44-74.) On April 20, 2018, ALJ McKay issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 23-42.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 167-168.)  However, on October 29, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-8.)  Thus, ALJ McKay's decision became the Commissioner's final decision.

2

Plaintiff timely commenced the instant action on November 25, 2019.  (ECF No. 1.)[1]

### B.   Plaintiff's Medical History

The administrative record contains approximately 283 pages of medical records, which were available to the ALJ at the time of her April 20, 2018 decision.  (R. at 261-550 [Exhibits 1F-17F].)  These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2015, the alleged onset date.  (R. at 29.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: Atrial Septal Defect (ASD) status/post repair, generalized anxiety disorder, and depression.  (R. at 29.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 29-31.)  **Between Steps 3 and 4** of

---

[1] The Appeals Council granted Plaintiff an extension of time to file the instant action.  (R. at 9-11.)

the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC)[2] and determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and
> 416.967(a) except she is limited to occasional crouching, crawling,
> kneeling, stooping/bending, but no climbing of stairs; must avoid
> workplace hazards such as dangerous, moving machinery and
> unprotected heights so the claimant is not able to climb ladders, ropes
> or scaffolds; is further limited to low stress work, which is work that
> is self-paced and not at a production rate and where the job duties are
> not interdependent with those of co-workers; and, she is limited to
> simple, routine and repetitive work.

(R. at 31-35.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (R. at 35.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as sorter, inspector, and assembler.  (R. at 35-36.)  The ALJ therefore

concluded that Plaintiff had not been under a disability, as defined in the Social

Security Act, since September 1, 2015.  (R. at 36.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

4

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

5

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.    Analysis

Plaintiff argues that the ALJ's decision to discount the opinions of her treating physician, treating psychiatrist, therapist, and state agency consultative psychiatrist resulted in an RFC assessment and hypothetical question to the VE unsupported by substantial evidence.  (ECF No. 18, PageID.661-673.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's decision.  (ECF No. 21, PageID.684-697.)  I will address each argument in turn.

### 1.    RFC and opinion evidence

The plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden

6

shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990), and *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).[3]  The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  ALJs "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . . [,]" but "are not

---

[3] These regulations apply to claims filed before March 27, 2017, like Plaintiff's DIB and SSI claims.

required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 408.

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight.  If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

S.S.R. 96-8p, 1996 WL 374184, at *7.  In other words, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ will consider the following factors when deciding the weight to give to any medical opinion: (1) examining relationship; (2) treatment relationship;

(3) supportability; (4) consistency with the record as a whole; and (5) specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Special care must be taken when considering the treating physician's opinion.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's medical opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (*per curiam*) (internal quotations omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "Wilson factors" listed in 20 C.F.R. §§ 404.1527(c), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis."  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the

9

Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.*, No. 15-cv-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

10

### 2.    Plaintiff has demonstrated no error with the ALJ's assessments of the medical opinions at issue

#### a.    Dr. Quadir Jaleel, M.D.

##### i.    Treatment and findings

Dr. Jaleel appears to have been Plaintiff's treating physician dating back to at least April 2013, when Plaintiff presented for treatment following an emergency room visit "due to almost passing out at home."  (R. at 308 [Exhibit 3F].) According to the medical records before the Court, the treatment relationship continued into 2015, 2016, and 2017.  (R. at 295-318 [Exhibit 3F], 377-397 [Exhibit 7F].)

On May 23, 2017, Dr. Jaleel completed a Medical Source Statement, listing Plaintiff's diagnoses as: allergic rhinitis, syncope, loss of weight, adjustment disorder with mixed anxiety and depressed mood, anorexia, anomalous pulmonary renous connection, and anxiety disorder; and Plaintiff's symptoms as: chest pain, dizziness, fatigue, shortness of breath, depression, anxiety, and rapid heartbeat.  (R. at 414 [Exhibit 11F].)  Further, he opined that Plaintiff would need several work restrictions including: sitting for three hours at one time, sitting a total of two hours in an eight-hour workday, standing/walking less than one hour at a time and one hour total in an eight-hour day, limited bending, squatting, crawling, climbing, and reaching, and lifting no more than 10 pounds, with the likelihood that she would miss four or more days of work per month.  (R. at 416 [Exhibit 11F].)

11

### ii.   The ALJ afforded Dr. Jaleel's opinion "little to no weight"

The ALJ afforded Dr. Jaleel's Medical Source Statement "little to no

weight," stating:

> Quadir Jaleel, M.D., completed a medical source statement in which
> he opined that the claimant could sit for up to three hours at one time,
> but only two hours total in an eight-hour day, which is inconsistent
> and undermines the value of his opinion.  Furthermore, his treatment
> notes fail to show any examinations or objective findings, but rather
> document the claimant's subjective complaints and orders (Exhibits
> 3F and 7F).  Moreover, the doctor never indicated any limitations or
> restrictions in his treatment notes.  As such, the undersigned gives
> little to no weight to this opinion (Exhibit 11F).

> Despite the claimant's allegations, she would be able to perform
> sedentary work with occasional crouching, crawling, kneeling,
> stooping/bending, while not climbing stairs because it could
> exacerbate her symptoms.

(R. at 33.)

### iii.   The ALJ provided good reasons for affording Dr. Jaleel's opinion "little to no weight," and substantial evidence supports her determination

The ALJ gave good reasons for discounting Dr. Jaleel's opinion, and

substantial evidence supports her determination.

First, the ALJ identified an obvious internal inconsistency in Dr. Jaleel's

opinion—namely, his indication that Plaintiff could sit for three hours at one time

followed immediately by the contradictory indication that Plaintiff could only sit

for two hours in an eight-hour workday. (R. at 33.) And a review of the Medical

Source Statement confirms the ALJ's finding. (R. at 416 [Exhibit 11F].)

Plaintiff asserts that the inconsistency "appears to have been a typographical

error, and/or an incorrect transposition of time" (ECF No. 18, PageID.664), but

cites to no evidence in support of this assertion.[4] Nonetheless, even if the Court

considers the inconsistency within Dr. Jaleel's opinion to be minor, it should find

the ALJ's decision to discount the opinion on that basis reasonable. Inconsistency

is a valid consideration when weighing opinion evidence. *See* 20 C.F.R. §§

404.1527(c)(4), 416.927(c)(4); *Wallace v. Comm'r of Soc. Sec.*, 367 F.Supp.2d

1123, 1134 (Cleland, J., *adopting report and recommendation* of Pepe, MJ.) (E.D.

Mich. 2005) ("The ALJ is not bound to accept the opinion of a treating physician if

that opinion either lacks sufficient support in terms of medical signs and laboratory

findings, or is either internally inconsistent or inconsistent with other credible

evidence of record."). And the questions regarding the amount of time Plaintiff

---

[4] Plaintiff cites no less than seven of her twenty-two footnotes on this page of her
brief, all of which are noticeably undersized (and with no spacing between them),
in violation of this Court's procedural rules, which require that "type size of all text
and footnotes must be no smaller than 10-1/2 characters per inch (non-
proportional) or 14 point (proportional)." *See* E.D. Mich. Local Rule 5.1(a)(3).
Given the fact that her brief reaches the maximum length of twenty-five pages, this
improper use of footnotes effectively extends her page limitations without leave.
Plaintiff's counsel was recently warned about this practice and her brief stricken on
that and other grounds, albeit in a case briefed after this one. (*Bialo v.
Commissioner*, Case No. 20-10671 (Text-Only Order dated Jan. 4, 2021)). In the
future, this practice must cease, or counsel's briefs will not be accepted.

could sit came one after the other on a simple check-box form, thus undermining the accuracy of the entire form, and the care Dr. Jaleel took to complete it.  The Sixth Circuit has recognized that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (citation omitted); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017) (finding a medical source statement that was in the "check-box format" was "an impotent addition to the record with little to no persuasive value").  This is especially true when considered in combination with the ALJ's additional reasoning.

Indeed, the ALJ also discounted Dr. Jaleel's opinion on the basis that he failed to indicate any of the same limitations or restrictions in his treatment notes (R. at 33) which, beyond a few notations directing Plaintiff to take "time off from work for 1 week[,]" is borne out by a review of the record (R. at 295-318 [Exhibit 3F], 377-397 [Exhibit 7F]).  Again, consistency with the record as a whole and supportability are appropriate factors for consideration when weighing medical opinions.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Further, the advice to take time off appears not to be new in every treatment note, but a repetition of identical form or boilerplate language after each additional office visit, and there is no indication that it is connected to any of the functional limitations Dr. Jaleel provided in the

14

May 2017 Medical Source Statement at issue.  (*See* R. 378, 382, 385, 388, 392, 395 [Exhibit 7F].)

Finally, though Dr. Jaleel's treatment notes largely documented his various treatment orders and Plaintiff's subjective complaints (R. at 295-318 [Exhibit 3F], 377-397 [Exhibit 7F]), as stated in the ALJ's reasoning, it was not entirely accurate for the ALJ to say that the treatment notes lack any examination or objective findings (R. at 33), as the Commissioner concedes (ECF No. 21, PageID.686-687). Dr. Jaleel's treatment notes include notations of Plaintiff's vitals and other general health information.  (*See, e.g.*, R. at 297-298 [Exhibit 3F].)  Nevertheless, Dr. Jaleel makes no connection between these notations and the limitations he included in the Medical Source Statement, nor do I see one, and Plaintiff makes no argument that such a connection exists.  And, even assuming error in this reasoning, the ALJ gave other good reasons for discounting the opinion which are supported by substantial evidence, as provided above.[5]

> **b.**   **Dr. Nicholas Morcos, M.D. and Jared Konecny, MSW**
>
> **i.**   **Treatment and findings**

---

[5] To the extent Plaintiff argues that the ALJ failed to consider the length of her treatment relationship with Dr. Jaleel (ECF No. 18, PageID.666), there is no *per se* rule requiring an exhaustive factor-by-factor analysis, *Francis*, 414 F. App'x at 804-05, and the ALJ discussed and referenced Dr. Jaleel's treatment notes in her decision (R. at 33), leaving little doubt that she understood the treatment relationship.

On March 3, 2016, Plaintiff presented to Katherine Rose Bresky, MSW at Michigan Medicine for a psychiatry intake, seeking therapy and medication management for symptoms consistent with anxiety and depression.  (R. at 339-344 [Exhibit 6F].)  According to Plaintiff, Dr. Nicholas Morcos, M.D. at Michigan Medicine became her psychiatrist in November 2016, and Jared Konecny, MSW her therapist in May 2017.  (ECF No. 18, PageID.666-667.)  The Commissioner does not dispute this assertion.

On November 17, 2017, Dr. Morcos and Dr. Konecny completed a joint "Medical Source Statement of Ability to do Work-Related Activities (Mental)" (R. at 548-550 [Exhibit 17F]), listing Plaintiff's diagnoses as generalized anxiety disorder, social anxiety disorder, and major depressive disorder, moderate (R. at 548 [Exhibit 17F]).  They opined that Plaintiff had moderate limitation in the ability to concentrate, persist, or maintain pace, to understand, remember, or apply information, to adapt or manage oneself, and to concentrate on the task at hand; and only mild limitation in the ability to interact with others, to understand what to do, and to engage in tasks around others.  (R. at 548-549 [Exhibit 17F].)  Further, despite indicating that Plaintiff would be off-task 20% of a normal workday and likely absent two or three times per month, they stated: "Symptoms of generalized anxiety and social anxiety are treatable and would not be expected to cause longstanding disability if she engages in appropriate care.  She may need work in a

different capacity or with restrictions/accommodations."  And: "Avoidance of

stressful situations leads to worsening anxiety.  It is likely that symptoms are

similar to those of 9/1/15 [Plaintiff's alleged onset date] (I did not evaluate then),

but would be expected to improve with continued treatment."  (R. at 549-550

[Exhibit 17F].)

### ii.    The ALJ afforded this Medical Source Statement "limited weight"

With regard to the above-summarized Medical Source Statement, the ALJ

stated:

> Nicholas Morcos, M.D., and Jared Koneeny, LLMSW, completed a
> mental health medical source statement dated November 2017, in
> which they noted no more than moderate limitations.  Although they
> indicated that the claimant would be off task 20% of the workday and
> would likely miss work two to three times a month, they also indicated
> that her symptoms are treatable and ". . . would not be expected to cause
> longstanding disability if she engaged in appropriate care."  They also
> noted, "She may need to work in a different capacity or with
> restrictions/accommodations." (Exhibit 17F).  Based on this opinion,
> it is clear that her treating physicians do not believe that her mental
> health impairments are disabling.  Furthermore, while the evidence
> does not support some of her limitations, such as the time off task and
> days absent from work, their overall opinion that she could work with
> restrictions or accommodations is consistent with the residual
> functional capacity herein.  As such, the undersigned is not adopting
> their opinions, but does give them limited weight (Exhibit 17F).

(R. at 34.)

### iii.   The Court should find no error in the ALJ's assessment of this Medical Source Statement

17

Plaintiff argues that the ALJ "cherry picked" portions of the Medical Source Statement completed by Dr. Morcos and Mr. Konecny, because she reasoned that they did not believe Plaintiff's mental impairments to be disabling, despite their statements that Plaintiff would be off-task for 20% of a workday and likely absent two or three times per month.  (ECF No. 18, PageID.668-669.)  But, again, the ALJ followed the proper framework for evaluating opinion evidence, noting the treatment relationship between Plaintiff and these providers, as well as the inconsistencies within the Medical Source Statement and inconsistencies with the record as a whole, 20 C.F.R. §§ 404.1527(c), 416.927(c); *Wilson*, 378 F.3d at 544; *Wallace*, 367 F.Supp.2d at 1134, and it is not in the Court's province to re-weigh the evidence, *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  Nor should the Court be inclined to under the circumstances, as the ALJ's findings were entirely reasonable and consistent with the opinion on its face.  Dr. Morcos and Mr. Konecny opined that Plaintiff suffered from only mild and moderate limitations, as opposed to marked or extreme limitations (Exhibit 17F), and the actual written statements (as opposed to boxes checked) in the Medical Source Statement disclaim sustained disability upon continued treatment, undermining the opinions regarding time off-task and absences.

Furthermore, in the portion of her brief challenging the ALJ's analysis of this Medical Source Statement, Plaintiff points to no medical or other evidence in

the record supporting those restrictions.  (ECF No. 18, PageID.671-672.)  *See Jordan* 548 F.3d at 423 ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  Accordingly, the Court should find no error in the ALJ's assessment of the Medical Source Statement completed by Dr. Morcos and Mr. Konecny.

### c.   State agency consulting psychiatrist Dr. L. Imasa, M.D.

#### i.   Consultative examination findings

On May 17, 2016, consultative examiner psychiatrist Dr. L. Imasa, M.D. examined Plaintiff, listing, in only two pages, Plaintiff's complaints and symptoms, as well as the findings of a mental status examination, and stating:

> This is a 39-year-old female who developed syncope and a workup done showed a heart problem and is scheduled for open-heart surgery on June 20, 2016.  She expressed experiencing anxiety and depression, although she indicated that the depression started in her mid teens.  She now has a five-month-old baby and indicated that she experiences more depression and anxiety.  She appeared nervous, her legs were shaking, she was biting her nails, and she had difficulty focusing, for example, she had difficulties with getting the numbers backwards.  As she had indicated, she is scheduled for heart surgery and with her current anxiety, it would appear that she would not be able to function in a work situation at the present time.

(R. at 326-328 [Exhibit 4F].)

#### ii.   The ALJ afforded this opinion "no weight"

The ALJ afforded Dr. Imasa's Medical Source Statement "no weight," stating:

19

L. Imasa performed a consultative examination in May 2016, in which it was noted that the claimant presented unaccompanied.  She reported anxiety since her thirties and depression since her teenage years; yet despite her anxiety and depression, she had completed a master's degree in public administration.  The report also noted that she was scheduled for open-heart surgery in July 2016.  The doctor opined that the claimant would "not be able to function in a work situation at the present time" (Exhibit 4F).  This opinion is not consistent with other treatment notes that failed to show any work related limitations or restrictions.  It is also noted that this was a onetime examination.  For these reasons, the undersigned gives no weight to this opinion.

(R. at 34.)

### iii.    The Court should find no error in the ALJ's assessment of this opinion

Substantial evidence supports the ALJ's decision to discount Dr. Imasa's opinion.  Accordingly, the Court should find no error in the ALJ's assessment of the opinion.

Although an ALJ should consider the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) when evaluating any medical opinion if the opinion of a treating physician is not afforded controlling weight, 20 C.F.R. §§ 404.1527(c), 416.927(c), the opinion of a consultative examiner is entitled to no special deference like that of a treating physician, *see Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).  Plaintiff points out that the ALJ found the opinion inconsistent with other treatment notes that failed to demonstrate any work-related limitations (ECF No. 18, PageID.669-670), but makes no argument suggesting error in this reasoning, and references no evidence in the record

20

demonstrating otherwise.  Instead, Plaintiff asserts only that the ALJ erred by

discounting the Medical Source Statement on the basis that Dr. Imasa conducted a

one-time examination, anecdotally suggesting "from the undersigned's experience"

that the Commissioner only views the one-time nature of these examinations

negatively when they are favorable to the claimant's position.  (ECF No. 18,

PageID.670.)  However, it is clear that the ALJ did not hinge her opinion solely on

the very limited relationship between doctor and patient; and in any case, lack of a

consistent treatment relationship is a legitimate basis for affording a medical

opinion little weight, *Wilson*, 378 F.3d at 544.  Moreover, Plaintiff's argument

ignores the lack of connection between Dr. Imasa's examination findings and

ultimate opinion regarding Plaintiff's ability to work, as well as the overall cursory

nature of document.  For example, although Dr. Imasa documented Plaintiff's

anxiety and depression, she appeared to find that Plaintiff was in fairly good

contact with reality, responded to questions spontaneously, and had appropriate

judgment.  (R. at 326-327 [Exhibit 4F].)[6]

---

[6] To the extent Plaintiff argues that if the ALJ formulated her own RFC without the
assistance of a medical opinion (ECF No. 18, PageID.670-671), that argument has
been rejected by the Sixth Circuit.  *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*,
732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument
that a residual functional capacity determination cannot be supported by substantial
evidence unless a physician offers an opinion consistent with that of the ALJ.")
(citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017)
(rejecting the argument that "the ALJ's RFC lacks substantial evidence because no
physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r*

### 3.    RFC and hypothetical to the VE

As Plaintiff's argument that the ALJ erred in assessing her RFC and ability to perform substantial gainful activity is based entirely on her assertion that the ALJ erred in assessing the opinion evidence (*see* ECF No. 18, PageID.671-673), the Court should find that it lacks merit, as explained in detail above.  Further, to the extent Plaintiff argues that any error in analyzing the medical opinions resulted in a flawed hypothetical question to the VE, she is in actuality challenging the RFC determination.  *See Kirchner v. Colvin*, No. 12-cv-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is

---

*of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence").  As this Court has previously noted, "the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion." *Gross v. Comm'r. of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) (citing *Rudd*).

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 21), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 16, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE